UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LORIS SANCHEZ, on behalf of himself
and others similarly situated,

                Plaintiff,

    -against-

GOAT FIFTY, LLC d/b/a COCO BISTRO,
"ABC CORPORATION" d/b/a INATTESO PIZZA
BAR, name of the corporation being fictitious and
unknown to Plaintiffs, and FRANK CASANO,

                Defendants.
-------------------------------------------------------------------X

Docket No. 24 cv 8191 (JGK) (HJR)

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

        Brian L. Greben, an attorney admitted to practice in the United States District Court for the Southern District of New York, affirms and declares as follows:

        1.     I am attorney of record for plaintiff, and as such am thoroughly conversant with the facts and circumstances herein based upon the contents of my file. I submit these Proposed Findings of Fact and Conclusions of Law pursuant to the Scheduling Order for Damages Inquest of May 14, 2025 (the "Scheduling Order") (ECF Doc. No. 39). A copy of the Scheduling Order annexed hereto as Exhibit "1."

## PROPOSED FINDINGS OF FACT

*Facts Relevant to Plaintiff's Claims for Minimum Wage and Overtime;*
*First, Second, Third and Fourth Claims for Relief.*

        2.     Plaintiff Loris Sanchez worked at Coco Bistro, a restaurant in downtown Manhattan that was owned and operated by defendant Frank Casano, from April 2019 through mid-November 2022. Plaintiff's job duties at Coco Bistro included, but were not limited to, working as a waiter and bartender. Affidavit of Plaintiff in Support of Motion for Default Judgment, dated April 11, 2025 (ECF Doc. No. 31) ("Plaintiff's Affidavit"), ¶2. A copy of

Plaintiff's Affidavit is annexed hereto as Exhibit "2." *See also* Complaint (ECF Doc. No. 1), ¶32; a copy of the Complaint is annexed hereto as Exhibit "3."

  3. Defendants began paying plaintiff a weekly salary of $850.00 per week in September 2019. This salary was paid through two weekly paychecks, one of which reported 40 hours per week at $10.00 per hour for a total of $400.00 per week, and another that paid $450.00 per week without specifying hours. Exhibit "4." The hours described in these paychecks were inaccurate and bore no relation to the hours plaintiff actually worked. In reality, during this period (September 2019 through March 2020) plaintiff worked at least seventy two (72) hours per week as follows: from 1:00 pm to 12:00 am on Tuesdays, Wednesdays, and Thursdays; from 1:00 pm to 1:00 am on Fridays; 11:00 am to 1:00 am on Saturdays; and 11:00 am to 12:00 am on Sundays. Plaintiff's Affidavit, ¶¶3, 4; Complaint, ¶¶34-35.

  4. Coco Bistro temporarily closed due to the Covid quarantine in March 2020. It reopened in May 2020, and from the beginning of May through mid-June 2020, plaintiff's schedule was similar to what it had been from September 2019 through March 2020 but his weekly salary was raised to $1,620.00. This salary was paid in two weekly checks: one reported 40 hours at a reported regular hourly rate of $22.50 per hour for a total of $900, and the other reported 32 hours at the same regular hourly rate for a total of $720.00. Exhibit "5." Plaintiff's Affidavit, ¶5; Complaint, ¶36.

  5. By June 2020, plaintiff was working at least seventy five (75) hours per week, including at least one additional hour over his old schedule on Fridays, Saturdays and Sundays. From June 2020 through March 2022, defendants paid him a weekly salary of $900.00 plus tips. His salary during this period was paid in single weekly checks reporting 40 hours at a reported regular hourly rate of $22.50 per hour for a total of $900. Exhibit "6." In April 2022 plaintiff's

2

weekly salary was raised to $910.40 per week, but his hours remained the same, resulting in a slight increase in his reported regular hourly rate to $22.76. Exhibit "7." The hours reported on his checks were slightly more than half the hours plaintiff actually worked per week. Plaintiff's Affidavit, ¶6; Complaint, ¶37.

      6.      From September 2019 through the closing of Coco Bistro on October 30, 2022, defendants did not pay plaintiff a premium overtime rate of 1.5 times his regular hourly rate for hours he worked after having already worked 40 hours per week. Casano knowingly and willfully operated Coco Bistro with a policy of not paying his staff overtime at a rate of 1.5 times each employee's regular hourly rate. Plaintiff's Affidavit, ¶7; Complaint, ¶¶38, 39, 41.

      7.      Coco Bistro ceased operations on October 30, 2022. Plaintiff worked for over twelve (12) hours on October 31, 2022 and an additional ten (10) hours between November 1 and November 15, 2022 to help close the restaurant out, but was not paid any money whatsoever for this work. To date, defendants have not paid plaintiff anything for the work he did during last day of October and the first half of November 2022. Plaintiff's Affidavit, ¶10; Complaint, ¶44.

      8.      Following the closing of Coco Bistro, Casano asked plaintiff to help him at another restaurant he owned and operated called Inatteso Pizza Bar, located in Battery Park City in lower Manhattan. From November 16, 2022 through January 18, 2023, plaintiff worked at Inatteso for fifteen (15) hours per week pursuant to a varying schedule. Casano promised him that he would pay plaintiff $500 per week for this work, but he did not keep his word and never paid him anything for the work he did at Inatteso. Plaintiff's Affidavit, ¶11; Complaint, ¶45.

      9.      Plaintiff has tried calling and texting Casano repeatedly to be compensated for his work concerning the closing of Coco Bistro, for the work performed for Inatteso, and for the expenses he made without reimbursement. Plaintiff's Affidavit, ¶12. An example of one such

3

text message, sent in September of 2023, is annexed hereto as Exhibit "8."

10. At all relevant times, plaintiff's employment at Coco Bistro and Inatteso was under the direct oversight of Casano. Frank Casano had total operational control over Coco Bistro and Inatteso, and was in charge of all hiring/firing. Casano implemented and set the wage and hour policy of Coco Bistro and Inatteso. Plaintiff's Affidavit, ¶¶13, 14; Complaint, ¶¶51-53.

11. Plaintiff's job duties at Coco Bistro and Inatteso were those of non-exempt hourly employees in that his duties were void of meaningful independent discretion with respect to the exercise of his duties. Plaintiff's Affidavit, ¶¶2, 15; Complaint, ¶54.

*Facts Related to Plaintiff's Claims for Damages Stemming from Defendants'*
*Failure to Provide him with Accurate Mandatory Employment Documents;*
*Fifth and Sixth Claims for Relief*

12. Defendants have not kept accurate records of wages earned or of hours plaintiff worked, and failed to provide him with accurate records of his wages or hours, nor did they provide him with accurate statements of wages, hours worked, rates paid, and gross wages. Plaintiff's Affidavit, ¶17; Complaint, ¶¶56-58.

13. Defendants failed to provide proper wage notices at the beginning of plaintiff's employment or at any time his compensation was adjusted. Plaintiff's Affidavit, ¶17; Complaint, ¶59.

*Facts Related to Plaintiff's Claims for Spread of Hours;*
*Seventh Claims for Relief*

14. Casano consistently encouraged plaintiff to work over 10 hours per day, but did not pay plaintiff an additional one hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of plaintiff's workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours. Plaintiff's Affidavit, ¶16; Complaint, ¶55.

4

*Facts Relevant to Plaintiff's Claims for Failure to Reimburse
for Expenses Related to Tools of the Trade;
Eighth and Ninth Claims for Relief.*

15. Casano often asked plaintiff to pay for items Coco Bistro needed, such as, *inter alia*, replacing a broken frozen drink machine or paying for musicians who were hired to perform at the restaurant. He presented bills and invoices to defendants for reimbursement, but was never reimbursed for expenses totaling at least $7,200.00. Plaintiff's Affidavit, ¶8; Complaint, ¶42.

16. Plaintiff also spent multiple days working on marketing during the course of his time at Coco Bistro, doing things like scouting, filming, decorating for holidays, and helping Casano construct an outdoor lounge, but was not paid any compensation whatsoever for this time. Plaintiff's Affidavit, ¶9; Complaint, ¶43.

*Facts Relevant to the Assertion of Personal Jurisdiction over Defendants*

17. Plaintiff commenced this action by filing a Complaint and accompanying documents on October 28, 2024 (ECF Doc. No. 1). Exhibit "3."

18. On January 16, 2025, the Summons & Complaint was served upon defendant Goat Fifty, LLC d/b/a Coco Bistro ("Coco Bistro") by personally serving Amy Lesch, authorized agent in the office of the Secretary of State, State of New York, at the office of the Secretary of State, State of New York. A copy of the Affidavit of Service concerning Coco Bistro is annexed hereto as Exhibit "9."

19. On January 23, 2025, the Summons & Complaint was served upon defendants "ABC Corporation" d/b/a Inatteso Pizza Bar ("Inatteso") and Frank Casano ("Casano") by personally serving John Doe (Co-Worker), a person of suitable age and discretion, at said defendants' actual place of business/employment, 28 Little West Street, Battery Park City, New York, NY 10004. *See* the Affidavits of Service annexed hereto as Exhibit "10."

20. Coco Bistro, Inatteso, and Casano failed to respond to the Complaint, and on February 18, 2025, the Court extended their time to answer or respond to the Complaint to March 13, 2025, and noted that defendants' failure to respond to the Complaint by that date could result in the entry of a default. ECF Doc. No. 16; Exhibit "11." A copy of the February 18, 2025 was served on defendants on the day that it was issued. ECF Doc. No. 17; Exhibit "12."

21. On March 14, 2025, the Court noted that defendants had failed to respond to the Complaint by the extended deadline and instructed Plaintiff to file a proposed order to show cause for a default judgment by March 28, 2025. ECF Doc. No. 20; Exhibit "13."

22. On March 27, 2025, the order to show cause filing deadline was extended to April 11, 2025, at plaintiff's request. ECF Doc. No. 22; Exhibit "14."

23. On April 9, 2025, plaintiff filed an unexecuted Certificate of Default and supporting Affirmation (ECF Doc. Nos. 24, 24-1, 24-2) and served it upon defendants. ECF Doc. No. 27; Exhibit "15."

24. On April 10, 2025, a Certificate of Default against defendants was executed on behalf of the Clerk of Court. ECF Doc. No. 28; Exhibit "16."

25. Plaintiff filed an Order to Show Cause seeking a default judgment pursuant to the Court's instructions on April 11, 2025. ECF Doc. Noc. 29-32.

26. On April 15, 2025, the Court ordered plaintiff to serve the Order to Show Cause papers upon defendants, and further ordered defendants to respond to the Order to Show Cause on or before May 5, 2025. ECF Doc. No. 34; Exhibit "17." Plaintiff served the Order to Show Cause upon defendants pursuant to the Court's instruction on April 16, 2025. ECF Doc. No. 35; Exhibit "18."

27. On May 13, 2025, the Court held that plaintiffs were entitled to a default and referred the matter to the Magistrate Judge for an inquest and to determine appropriate damages, as well as any other provisions of an appropriate judgment. ECF Doc. Nos. 36, 37; Exhibit "19."

28. On May 13, 2025, plaintiff filed a Supplemental Affirmation of Service notifying the Court that the Order to Show Cause documents served on Coco Bistro and Frank Casano were returned to the undersigned by the post office. The Supplemental Affirmation of Service further noted that a) the mailing to defendant Inatteso *was not* returned to the undersigned by the post office; b) defendant Frank Casano is the owner of Inatteso, and was therefore put on notice of the motion for a default judgment against all defendants by the papers served upon that address; and c) Coco Bistro, which was also owned and operated by Frank Casano, was out of business and no longer in operation prior to the filing of the instant lawsuit. ECF Doc. No. 38; Exhibit "20."

29. On May 14, 2025, the Scheduling Order was issued. ECF Doc. No. 39; Exhibit "1."

30. To date, defendants have failed to respond to the Order to Show Cause.

*Facts Relevant to Plaintiff's Application for Attorneys' Fees and Costs*

31. Plaintiff's counsel has spent 50.2 hours working on this case. At plaintiff's counsel's usual hourly rate of $400.00 per hour, the total fee for this work is $20,080.00. *See* the accompanying Affirmation of Brian L. Greben, ¶2. *See also* the lodestar figures annexed hereto as Exhibit "21."

32. Plaintiff's costs include the fee of $405.00 for filing the Complaint and supporting documents; process server fees of $266.80; and $21.69 in postage for filing various documents. Exhibit "22." *See also* the accompanying Affirmation of Brian L. Greben, ¶3.

7

**PROPOSED CONCLUSIONS OF LAW**

*Plaintiff's Regular Hourly Rate*

33.  Restaurants are part of the "hospitality industry," and plaintiff was an employee in the hospitality industry. 12 NYCRR §§ 146-3.1, 3.2. Because of this plaintiff was legally entitled to "be paid hourly rates of pay. Employers may not pay employees on a daily, weekly, salary, piece rate or other non-hourly rate base." 12 NYCRR § 146-2.5. Defendants violated this rule by paying plaintiff via set weekly salaries. Complaint, ¶¶33-37; Plaintiff Affidavit, ¶¶3-6.

34.  Accordingly, plaintiff's "regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCRR § 146-3.5. *See also Guerra v. Trece Corp.*, 18 cv 625 (ER), 2020 WL 7028955, *13–14 (S.D.N.Y. Nov. 30, 2020); *Romero v. Rung Charoen Sub, Inc.*, 16 cv 1239 (VMS), 2017 WL 4480758, *10 (E.D.N.Y. Sept. 30, 2017).

35.  Plaintiff worked considerably more than 40 hours per week throughout his employment with Coco Bistro. His hourly rate must therefore be calculated by dividing his weekly salary by 40.

36.  From September 2019 through March 2020, Plaintiff was paid a salary of $850.00 per week; his regular hourly rate during this period was therefore $21.25.

37.  From the beginning of May 2020 through mid-June 2020, Plaintiff was paid a salary of $1,620.00 per week; his regular hourly rate during this period was therefore $40.50.

38.  From June 2020 through March 2022, Plaintiff was paid a salary of $900.00 per week; his regular hourly rate during this period was therefore $22.50.

39. From the beginning of April 2022 through October 30, 2022, Plaintiff was paid a salary of $910.40 per week; his regular hourly rate during this period was therefore $22.76.

*Calculation of Overtime*

40. The FLSA and the NYLL generally require employers to pay a premium overtime rate to employees who work more than 40 hours in a workweek. Specifically, employers must pay employees at least one-and-one-half times their regular rate of pay for each hour worked in excess of 40 in a week. *See* 29 U.S.C.A. § 201(a)(1) *et seq.*; NYLL § 650 *et seq.*; 12 NYCRR § 146-1.4. *See also Easterly v. Tri-Star Transport Corp.*, 11 cv 6365 (VB), 2015 WL 337535 (E.D.N.Y. Jan. 23, 2015).

41. As noted above, Plaintiff's regular hourly rate from September 2019 through March 2020 was $21.25; accordingly, his overtime rate for this period was $31.88 (1.5 times $21.25). Plaintiff's regular hourly rate from the beginning of May 2020 through mid-June 2020 was $40.50; accordingly, his overtime rate for this period was $60.75 (1.5 times $40.50). Plaintiff's regular hourly rate from June 2020 through March 2022 was therefore $22.50; accordingly, his overtime rate for this period was $33.75 (1.5 times $22.50). Plaintiff's regular hourly rate from the beginning of May 2020 through mid-June 2020 was $22.76; accordingly, his overtime rate for this period was $34.14 (1.5 times $22.76).

42. Pursuant to the above facts and authorities, defendants were legally obligated to pay his at a premium rate of 1.5 times his regular rate per hour for all hours he worked after already having worked forty (40) hours in any given week. Defendants failed to satisfy this obligation. Complaint, ¶¶38, 39, 41; Plaintiff Affidavit, ¶7. A year by year breakdown of the overtime owed to plaintiff may be found in the spreadsheet annexed hereto as Exhibit "23."

*Plaintiff's Recovery is not Limited to Minimum Wage*

43. From October 31, 2022, through November 15, 2022, plaintiff did not work overtime hours. He did, however, work regular hours (i.e., less than 40 hour per week) for which he was not paid anything. Similarly, plaintiff worked about 15 hours per week at Inatteso for nine (9) weeks. Plaintiff was promised $500.00 per week for his work at Inatteso but was actually paid nothing. Complaint, ¶45; Plaintiff Affidavit, ¶11.

44. The FLSA provides that an employer who unlawfully fails to pay his employees the wages to which they are entitled "shall be liable to the employee or employees affected in the amount of their unpaid minimum wage, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.S. § 216(b) (emphasis provided).

45. The NYLL has similar requirements, but its protections are not limited to minimum wage or overtime. The NYLL obligates employers to pay their employees *the compensation that the employees were promised – not only minimum wage or overtime* – plus liquidated damages, even if the employee's claims do not involve working over forty hours per week:

> Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week. Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts.
>
> *Under the NYLL, a prevailing plaintiff is entitled to recover the full amount of wages owed, not just the statutory minimum wage for the hours worked.*

*Patino v. Brady Parking, Inc.*, 2017 WL 5198192, *13–14 (S.D.N.Y. 2017) (emphasis provided) (citations and quotation marks omitted). *See also Soto v. Armstrong Realty Mngmnt. Corp.,*

10

2016 WL 7396687, *2 (S.D.N.Y. 2016) ("The FLSA allows recovery for unpaid 'straight time' only up to the minimum wage rate.

46.   Moreover, the NYLL provides for a claim of straight time at a rate higher than the minimum wage if the parties previously agreed to that rate… .") (citations and quotations omitted); *Hernandez v. NJK Contractors, Inc.*, 2015 WL 1966355, *42 (E.D.N.Y. 2015) ("The NYLL expressly provides that employees are entitled to recover all unpaid wages.  Employers are required to pay employees their wages that are earned.") (citations omitted); *Armata v. Unique Cleaning Servs., LLC*, 2015 WL 12645527, *5 (E.D.N.Y. 2015) ("Although Plaintiff asserts minimum wage claims under both the FLSA and the NYLL…she pursues only her claim under the NYLL, since hourly rate exceeded the federal minimum wage rate during the relevant FLSA period."); *Ho v. Target Const. of NY Corp.,* 2011 WL 1131510, *14 (S.D.N.Y. 2011) (holding that under the NYLL, "[p]laintiff can…recover for all unpaid wages at the promised rate of pay… .").

47.   The federal minimum wage does not preempt the state wage requirements, and a plaintiff may recover under whatever statute provides the highest measure of damages. *Wicaksono v. XYZ 48 Corp.*, 10 cv 3635 (LAK)(JCF), 2011 WL 2022644, *3 (E.D.N.Y. May 2, 2011).  Furthermore, "[t]he Court applies the highest wage—whether state or federal—in determining whether there is a FLSA minimum wage violation."  *Hwangbo v. Kimganae, Inc.,* 19 cv 6356 (DLI) (SJB), 2021 WL 2843839 at *5 (E.D.N.Y. Jun. 1, 2021) (citing 29 C.F.R. § 778.5).

48.   Accordingly, Plaintiff is entitled to the regular hourly rates described in the spreadsheet contained in Exhibit "23," and his recovery is not limited to minimum wage.

11

*Spread of Hours*

49.     Under the NYLL and supporting regulations, employers are liable to their employees for an additional one hour of pay at the standard minimum wage rate for every day in which such an employee's workday exceeds 10 hours.  *See, inter alia,* 12 NYCRR § 146-1.6 ("Spread of Hours Greater than 10 in Restaurants and All-Year Hotels").  *See also Godinez v. BestWingers LLC,* 16 cv 6434 (JGK)(SDA), 2018 WL 1320340, *3 (S.D.N.Y. Feb. 21, 2018); *Romero, supra*, 2017 WL 4480758 at *11; *Tarazona v. Rotana Café & Restaurant Inc.*, 16 cv 76 (PK), 2017 WL 2271355, *7 (E.D.N.Y. May 23, 2017); *Wicaksono, supra*, 2011 WL 2022644, *6.

50.     Defendants never made Spread of Hours payments to its employees, including Plaintiff.  Plaintiff Affidavit, ¶16; Complaint, ¶55.

51.     The spread of hours figures found in the damages spreadsheet annexed as Exhibit "23" were calculated by multiplying the number of days Plaintiff worked more than ten hour per day per week by the applicable minimum wage by the number of weeks he worked during each relevant period.

*Plaintiff Is Entitled To Reimbursement of his Expenses*

52.     It is well established that employers must reimburse their employees for expenses incurred by an employee's work if the expenses reduce the employee's compensation.  *Aquino v. Uber Techs., Inc.*, 22 cv 4267 (KHP), 2023 WL 8183802, **6-7 (S.D.N.Y. Nov. 27, 2023) ("Business expenses are those incurred 'primarily for the benefit or convenience of the employer.' However, *if such expenses 'cut[ ] into the minimum or overtime wages required to be paid ... under the Act,' the employer must reimburse the employee for them*." (emphasis provided) (citing 29 C.F.R. §§ 531.32(c), 531.35) (other citations omitted).

53.     As noted in paragraph 8 of his Affidavit, Plaintiff incurred expenses of at least

$7,200.00 by purchasing items and services for defendants' benefit including, *inter alia*, replacing a broken frozen drink machine or paying for musicians who were hired to perform at the restaurant.  Plaintiffs is entitled to reimbursement for these expenses.

*Defendants are Liable to Plaintiff for Compensatory and Liquidated Damages*

54. The FLSA provides that an employer who unlawfully fails to pay his employees the wages to which they are entitled "shall be liable to the employee or employees affected in the amount of their unpaid minimum wage, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(b) (emphasis provided).

55. The NYLL has similar requirements regarding minimum wage and overtime, and "mirrors the FLSA in compensation provisions… ." *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011).  *See also* NYLL § 160; 12 N.Y.C.R.R. § 146-1.4.  Indeed, the NYLL is "the state analogue to the federal FLSA." *D'Arpa v. Runway Towing Corp.*, 2013 WL 3010810, *18 (E.D.N.Y. 2013) (citations and quotation marks omitted).  Moreover, "analysis of the FLSA applies equally to…claims under the NYLL." *Armata v. Unique Cleaning Services, LLC,* 13 cv 3625 (DLI) (RER), 2015 WL 12645527, *3 (E.D.N.Y. Aug. 27, 2015).  Like the FLSA, the NYLL also provides for liquidated damages equal to 100% of the underpayment.  NYLL § 663.  Liquidated damages are provided for Spread of Hours damages in the same manner as minimum wage or overtime damages.  *Tarazona, supra*, 2017 WL 2271355, *8.

56. Liquidated damages are mandatory unless defendants can prove that they acted in good faith.  *Guallpa v. NY Pro Signs, Inc.*, 2014 U.S. Dist. LEXIS 77033, *16 (S.D.N.Y. 2014) ("Under the FLSA, liquidated damages in an amount equal to compensatory damages are mandatory, unless an employer demonstrates that it acted in good faith.") (citing 29 U.S.C. §§

13

216(b), 260)); NYLL § 198(1-a) ("unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," employee can recover "an additional amount as liquidated damages equal to one hundred percent" of unpaid compensation). Because defendants defaulted, they cannot make the showing of good faith required to avoid liquidated damages. *Xin Long Lin v. New Fresca Tortillas, Inc.*, 18 cv 3246 (RJD) (RER), 2019 WL 3716199, *7 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 18cv 3246 (RJD) (RER), 2019 WL 3714600 (E.D.N.Y. May 28, 2019) ("Since Defendants failed to file an answer or respond to this motion, and default judgment has been entered against them, the failure to pay Plaintiff is deemed willful.") (citations omitted); *Wicaksono, supra*, 2011 WL 2022644, *6. ("Although double damages are the norm, courts have the discretion not to award such damages if an employer shows that its violations were in good faith. By reason of their default, the defendant has failed to make this showing, and the plaintiffs are entitled to recover twice the amount they are owed under minimum wage and overtime laws.") (citations and quotation marks omitted).

57.  Defendants cannot show good faith unless they show that they "took active steps to ascertain the dictates" of the FLSA and NYLL. *Hart v. RCI Hospitality Holdings, Inc.,* 90 F. Supp. 3d 250, 276 (S.D.N.Y. 2015) (citations omitted). *See also Garcia v. Jonjon Deli Grocery Corp.*, 13 cv 8835 (AT), 2015 WL 4940107, *6 (S.D.N.Y. Aug. 11, 2015) ("[A] showing of good faith 'requires more than ignorance of the prevailing law or uncertainty about its development.'") (quoting *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 at 71 (2d Cir. 1997)).

58.  Defendants have obviously not made a showing of good faith, and liquidated damages should therefore be awarded.

*Statutory Penalties*

59.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 198 (1)(a).

60.     Defendants utterly failed to satisfy this requirement, as plaintiff never received a wage statement from defendants. Plaintiff Affidavit, ¶17.  Due to defendants' violations of New York Labor Law, plaintiff is entitled to recover from defendants, jointly and severally, $50.00 for each workday the violations occurred or continued to occur, up to $5,000.00 per plaintiff. NYLL § 198(1-d). *See also Wing Chan v. XIFU Food, Inc.*, 18 cv 5445 (ARR)(RML), 2020 WL 5027861, *9 (E.D.N.Y. Aug. 5, 2020); *Romero, supra*, 2017 WL 4480758 at *13.  Plaintiff worked more than 100 workdays, and is thus entitled to $5,000.00.

61.     The NYLL and supporting regulations further require employers to provide detailed paystub information to employees every payday. NYLL § 195 (3). Defendants failed to satisfy this requirement, as Plaintiff did not receive accurate paystubs from defendants.  Plaintiff Affidavit, ¶17.

62.     Due to Defendants' violations of NYLL § 195-1(d), Plaintiff is entitled to recover from Defendants, jointly and severally, $250.00 for each workday the violations occurred or continued to occur, up to $5,000.00. NYLL § 198 (1-d).  *See also Wing Chan. supra*, 2020 WL 5027861 at *9; *Romero, supra*, 2017 WL 4480758 at *13.  Plaintiff worked more than 20

15

workdays and is entitled to the maximum of $5,000.00.

*Prejudgment and Post Judgment Interest*

63. Under New York law, the court may award prejudgment interest pursuant to the NYLL and CPLR 5001. *Romero, supra*, 2017 WL 4480758 at *14 ("the NYLL permits the award of both liquidated damages and pre-judgment interest. This dual availability occurs because New York State views liquidated damages as punitive, and not compensatory, such that pre-judgment interest is not a duplicative damages award.") (citations omitted); *Easterly supra*, 2015 WL 337535 at *3 (Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest. Courts ordinarily apply a statutory interest rate of nine percent per annum in determining prejudgment interest under New York Law") (citations omitted).

64. Moreover, "[t]he availability of both NYLL liquidated damages and pre-judgment interest remains true even where liability is found not only under NYLL but also under the FLSA." *Romero, supra*, 2017 WL 4480758 at *14 (citations and quotation marks omitted). *See also Wicaksono, supra*, 2011 WL 2022644 at *8.

65. In addition, "[p]laintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a), which provides that '[i]nterest shall be allowed on any money judgment in a civil case recovered in district court.'"). *Tarazona, supra*, 2017 WL 2271355, **8, 9 (citations omitted.) *See also Romero, supra*, 2017 WL 4480758 at *15 ("Plaintiff is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.") (citations omitted).

66. Upon information and belief, pre and post judgment interest calculations are generally provided by the Clerk. Accordingly, we have not prepared total interest figures, and have not included them in the spreadsheet annexed hereto as Exhibit "23." If the Court

concludes that we should have entered the interest figures, and should not rely on the Clerk's calculations, plaintiff humbly requests that he be given the opportunity to submit interest calculations in a supplemental filing.

*Joint and Severable Liability*

67.  Defendants are jointly and severally liable for Plaintiff's damages. *de Los Santos v. Marte Constr., Inc.*, 18 cv 10748 (PAE)(KHP), 2020 WL 8549054, *4 (S.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, 18 cv 10748 (PAE)(KHP), 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020); *Lopez v. Cajmant LLC*, 15 cv 593 (ENV) (RER), 2020 WL 9814059, *4 (E.D.N.Y. Oct. 26, 2020); *Khurana v. JMP USA, Inc.*, 14 CV 4448 (SIL), 2017 WL 1251102, *9 (E.D.N.Y. Apr. 5, 2017).

*Attorney's Fees and Costs*

68.  The FLSA and NYLL both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("the court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paidby the defendant, and costs of the action"); NYLL § 663 (1) ("[An employee] may recover costs and such reasonable attorney's fees as may be allowed by the court"). *See* the accompanying Affirmation of Brian L. Greben and the lodestar figures annexed hereto as Exhibit "21."

## CONCLUSION

69.  A chart setting out the damages that plaintiff is entitled to recover is annexed hereto as Exhibit "23." The information includes each relevant period of his employment, in which he was paid a particular amount, worked a particular number of hours, and was owed a particular amount based on these factors and/or the his regular hourly rates; the number of weeks in each period; the number of regular and overtime hours he worked each week of the applicable

period; the amounts he was owed for regular and overtime hours worked during each week of the applicable period; the amount he was actually paid each week of each period; his amounts of compensatory, spread of hours, and liquidated damages owed during each week of his damages; the total of the aforementioned damages; his unreimbursed expenses; and his statutory fines. Plaintiff is owed four hundred forty five thousand four hundred seventy one dollars and eighty one cents ($445,471.81) in damages, plus costs, attorney's fees, prejudgment interest, and post judgment interest. Exhibit "23."

70. Plaintiff should be awarded damages as follows:

    a) Defendants Goat Fifty, LLC d/b/a Coco Bistro and Frank Casano are jointly and severally liable for compensatory damages, liquidated damages and statutory penalties in the amount of $426,471.90, plus prejudgment and post judgment interest in an amount determined by the Clerk;

    b) Defendants "ABC Corporation" d/b/a Inatteso Pizza Bar and Frank Casano are jointly and severally liable for compensatory damages, and liquidated damages in the amount of $8,999.91, plus prejudgment and post judgment interest in an amount determined by the Clerk;

    c) Defendants Goat Fifty, LLC d/b/a Coco Bistro, "ABC Corporation" d/b/a Inatteso Pizza Bar, and Frank Casano are jointly and severally liable for attorneys' fees in the amount of $20,080.00; costs in the amount of $693.49, plus prejudgment and post judgment interest in an amount determined by the Clerk; and

    d) Such other and further relief as the Court may deem appropriate.

Dated: Great Neck, New York
      July 14, 2025

                                      LAW OFFICE OF BRIAN L. GREBEN

                                  /s/ Brian L. Greben
                                  Brian L. Greben
                                  316 Great Neck
                                  Road Great Neck,
                                  NY 11021
                                  (516) 304-5357
                                  brian@grebenlegal.com